IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.               //        CRIMINAL NO. 1:12-CR-11

TARVIS DUNHAM,

        Defendant.

MEMORANDUM ORDER AND OPINION DENYING
DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]

Pending before the Court is the motion of the defendant, Tarvis Dunham ("Dunham"), for a new trial. (Dkt. No. 83). For the reasons that follow, the Court **DENIES** the defendant's motion for a new trial as to Counts 2, 4, 5, 6, 9 (Dkt. No. 83) and **VACATES** and **DISMISSES** the defendant's conviction on Count 7.

**I.**

**A.**

On December 18, 2013, a grand jury returned a nine-count superseding indictment against Dunham, charging him in Count 1 with Obstructing Justice by Retaliating Against a Witness in violation of 18 U.S.C. § 1513 (a)(1)(A); in Count 2 with Obstructing Justice by Retaliating Against a Witness in violation of 18 U.S.C. § 1513 (b)(1); in Count 3 with Protection of Officer and Employees of the United States in violation of 18 U.S.C. §§ 1113 and 1114; in Count

**MEMORANDUM ORDER AND OPINION DENYING**
**DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]**

4 with Assaulting, Resisting, and Impeding Certain Officers or Employees in violation of 18 U.S.C.  § 111 (a)(1) and (b) (Assault of Toothman); in Count 5 with Assaulting, Resisting, and Impeding Certain Officers and Employees in violation of 18 U.S.C. § 111 (a)(1) (Assault of Schultz); in Count 6 with Assaulting, Resisting, and Impeding Certain Officers and Employees in violation of 18 U.S.C. § 111 (a)(1) and (b)  (Assault of Ball); in Count 7 with Assaulting, Resisting, and Impeding Certain Officers and Employees in violation of 18 U.S.C. § 111 (a)(1) and (b) (Assault of Fitch); in Count 8 with Assaulting, Resisting, and Impeding Certain Officers and Employees in violation of 18 U.S.C. § 111 (a)(1) (Assault of Meyer); and in Count 9 with Assaulting, Resisting, and Impeding Certain Officers and Employees in violation of 18 U.S.C. § 111 (a)(1).

On January 29, 2013, after to a five-day trial, a jury convicted the defendant on Counts 2, 4, 5 (lesser-included), 6, 7, and 9 of the Indictment, and acquitted him on Counts 1, 3 and 8. Dunham now contends that he is entitled to a new trial pursuant to Fed. R. Crim. P. 33 because the Government suppressed certain evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).

**MEMORANDUM ORDER AND OPINION DENYING
DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]**

B.

1. **Trial Testimony**

At trial, the Government called numerous witnesses employed at the United States Penitentiary Hazelton ("USP Hazelton") who either witnessed Dunham's attack on case manager Kerri Toothman ("Toothman") or responded to a call for staff assistance to handle the matter. During her testimony, Toothman recounted the history between her and the defendant which led up to the assault on June 14, 2011. Toothman explained that she had written an incident report on Dunham in November, 2010, which resulted in Dunham's request for transfer being denied. According to Toothman, Dunham visited her on June 14, 2011 allegedly to discuss his presentence report. When he entered her office, he sat across from her. When she was distracted, looking for his file, he punched her head and then grabbed her by the hair. Toothman testified that he then proceeded to strike her on her head and face several times, and also attempted to twist her neck. She began screaming for help and was eventually aided by several staff members, who attempted to stop the defendant's attack and eventually were able to pry her loose from his hold. As a result of Dunham's attack, Toothman

<u>**MEMORANDUM ORDER AND OPINION DENYING
DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]**</u>

suffered a number of injuries, including a concussion, bruising, a laceration, and a strained neck.

Unit Secretary Dean Moyers ("Moyers") and Unit Manager Walter Williams ("Williams") both testified at trial that they responded to Toothman's screams for help. They witnessed Dunham striking Toothman. Although they attempted to restrain him, Dunham would not obey their commands.

Challenge Treatment Specialist Charles Reshenberg ("Reshenberg"), Challenge Treatment Specialist Christopher Baker ("Baker"), Challenge Treatment Specialist Gregory Harris ("Harris"), Case Counselor Eric Griffin ("Griffin") and Lt. David Huffman ("Huffman") also rushed to Toothman's aid after hearing the staff assistance alarm. Each arrived in Toothman's office at some point after Moyers and Williams. Baker testified that he observed Dunham holding Toothman by the back of the head and hitting her. He also testified that Dunham resisted staff attempts to restrain him. Reshenberg, Harris, Griffin, and Huffman all testified that they witnessed the defendant holding Toothman and refusing to comply with the staff's commands. They also testified that the staff members did not use excessive force in restraining Dunham.

## MEMORANDUM ORDER AND OPINION DENYING
## DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]

Correctional Officer Neal Schultz ("Schultz") and Engineering Technician Ardell Ball ("Ball")testified that they arrived on the scene as Dunham and Toothman were emerging from Toothman's office. Schultz testified that Dunham grabbed his leg and tried to bite him.  Ball testified that Dunham kicked him in the chest and in the arm as he was attempting to restrain one of Dunham's legs.

Correctional Officer John Fitch ("Fitch") provided the testimony which is now at issue. According to Fitch, he arrived at Toothman's office after he heard the staff assistance alarm. Upon his arrival, he witnessed Dunham holding Toothman with his left hand and attempting to hit her. Fitch testified that he attempted to restrain Dunham's hand, but Dunham pulled away and eventually bit Fitch on the finger.  He also alleged that Dunham refused to follow any commands from the staff members and that the staff members did not use excessive force in restraining Dunham.

### 2.   Disclosure of OIG Investigation of CO Fitch

The Government claims that, in mid-January of 2013, prior to trial, it was made aware of an investigation of Fitch by the Officer of Inspector General ("OIG"). The investigation was based on Fitch's alleged introduction of contraband into the prison. (Dkt. No. 84 at 7).   The Government concedes that it did not

**MEMORANDUM ORDER AND OPINION DENYING
DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]**

disclose the evidence of the OIG investigation prior to trial because that investigation was on-going and Fitch was unaware that he was being investigated. (Dkt. No. 84 at 11). The Government eventually filed an *ex parte Giglio* disclosure with the Court on April 4, 2013, in which it described the allegations against Fitch. (Dkt. No. 71). It later filed a supplemental disclosure on May 1, 2013, that included a transcript from an interview of Fitch regarding the allegations against him, and Fitch's resignation from his position following this investigation. (Dkt. No. 77).

**II.**

Pursuant to Fed. R. Crim. P. 33(a), the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." The decision to grant a new trial is entrusted to the sound discretion of the trial court, United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003), and it "should exercise [this] discretion . . . sparingly." United States v. Chong Lam, 677 F.3d 190, 203 (4th Cir. 2012) (internal quotation marks and citations omitted). Brady and its progeny "require[] a court to vacate a conviction and order a new trial if it finds that the prosecution suppressed materially exculpatory evidence." United States v. King, 628 F.3d 693, 701 (4th Cir. 2011).

### MEMORANDUM ORDER AND OPINION DENYING
### DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]

### III.

Dunham argues that he is entitled to a new trial as a consequence of the Government's failure to disclose exculpatory material—the OIG investigation of Fitch - in violation of <u>Brady</u>. To secure a new trial based on such a violation, Dunham must establish (1) "that the evidence at issue [is]favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that the evidence [was] suppressed by the [Government], either willfully or inadvertently;" and (3) "that the evidence was material to the defense, i.e., prejudice must have ensued." <u>United States v. Moussaoui</u>, 591 F.3d 263, 285(4th Cir. 2010) (internal quotation marks omitted)(quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999)); see also <u>King</u>,628 F.3d at 701-02.

### A.

In order to satisfy the first element of a <u>Brady</u> violation, Dunham must identify the existence of evidence "favorable to [him], either because it is exculpatory, or because it is impeaching." <u>Strickler</u>, 527 U.S. at 292. Stated differently, "favorable" evidence is that which "tend[s] to exculpate the accused" or "adversely affect[] the credibility of the government's witnesses."

**MEMORANDUM ORDER AND OPINION DENYING
DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]**

United States v. Trevino, 89 F.3d 187, 189 (4th Cir. 1996) (citing

United States v. Bagley, 473 U.S. 667, 676 (1985)).

Dunham argues that the suppressed evidence was favorable to

him because, had "the government provided any information about the

investigation against Fitch, then undersigned counsel would have

fully exploited the impeachment potential of this information on

cross-examination of Fitch." (Dkt. No. 83 at 4). He goes on to

argue that "[q]uestions about his misconduct would have

demonstrated to the jury that Fitch was a biased witness who had a

strong interest in rendering trial testimony favorable to U.S.P.

Hazelton and favorable to the prosecution so that he could save his

job and avoid his own federal prosecution." Id.

The Government concedes, and the Court agrees, that Dunham has

adequately established the first prong of the Brady analysis. See

(Dkt. No. 84 at 11). Because Dunham could have used the evidence of

the OIG investigation to impeach Fitch's credibility during cross-

examination, by suggesting to the jury that Fitch had ulterior

motives to testify favorably for the government - namely, saving

his job and avoiding federal prosecution, that evidence was

favorable to the defendant.

**B.**

## MEMORANDUM ORDER AND OPINION DENYING
## DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]

The second element of the Brady analysis requires the defendant to show that the prosecution "suppressed" the evidence in question, either willfully or inadvertently. King, 628 F.3d at 701. In its simplest terms, "[s]uppressed evidence is 'information which had been known to the prosecution but unknown to the defense.'" Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 557 (4th Cir. 1999) (quoting Agurs, 427 U.S. at 103).

The Government concedes that it did not disclose the evidence of the OIG investigation to the defendant prior to his trial, which began on January 22, 2013. (Dkt. No. 84 at 11). The OIG investigation of Fitch began in December, 2012, and the Government was notified about it in January, 2013. The Government, however, chose not to release the information to the defendant prior to trial because of the on-going nature of the investigation involving Fitch. Id. Hence, the Court finds that the defendant has adequately established that the prosecution "suppressed" the evidence in issue.

### C.

The final, and most critical, element of the Brady analysis requires the defendant to show that the suppressed evidence was "material." King, 628 F.3d at 701. Evidence is "material" when its

cumulative effect is such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles, 514 U.S. at 433 (internal citations and quotation marks omitted). A reasonable probability is one sufficient to "undermine confidence" in the verdict. Id. at 434. In other words, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." Agurs, 427 U.S. at 109-10. Rather, the appropriate inquiry is "whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Strickler, 523 U.S. at 290 (internal quotation marks omitted).

Dunham argues that the evidence related to the investigation of Fitch was "material" in that it "undermines the confidence in the jury's verdict, particularly with reference to Count 7, as Fitch served as the sole provider of testimony as to that count." (Dkt. No. 83 at 5). He believes that "[q]uestions about his misconduct would have demonstrated to the jury that Fitch was a biased witness who had a strong interest in rendering trial testimony favorable to U.S.P. Hazelton and favorable to the

**MEMORANDUM ORDER AND OPINION DENYING**
**DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]**

prosecution so that he could save his job and avoid his own federal prosecution." (Dkt. No. 83 at 4).

Furthermore, Dunham asserts that Fitch's testimony "unfairly bolstered the government's case as a whole" because "... Fitch had a true insider perspective who provided rich testimony for the government. His testimony naturally could have persuaded the jury to convict as to all counts of the conviction in a critical way." (Dkt. No. 83 at 5).

There are two reasons, however, why Dunham is unable to establish that the evidence surrounding the OIG investigation of Fitch was material to Counts 2, 4, 5, 6, and 9. First, he would have been unable to use the evidence of the OIG investigation at trial to show bias on the part of Fitch. At the time of trial, Fitch had not been made aware that the investigation against him was taking place. Thus, there is no way that, as Dunham has asserted, Fitch presented biased testimony at trial "so that he could save his job and avoid his own federal prosecution" (Dkt. No. 83 at 4). Since Fitch did not know he was at risk of losing his job and facing federal prosecution, Dunham's argument fails.

Second, in light of the volume and nature of the evidence presented by the Government at trial, there is no appreciable

**MEMORANDUM ORDER AND OPINION DENYING**
**DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]**

possibility that the earlier disclosure of the <u>Brady</u> material would have had an effect on the ultimate outcome of the case. Suppressed evidence impeaching a witness "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." <u>Smith v. Cain</u>, 132 S.Ct. 627, 630 (2012). Further, in order to be material, the suppressed evidence must raise a reasonable probability of a different verdict. <u>Strickler</u>, 527 U.S. at 291.

It is beyond debate that, aside from the testimony of Fitch, the government presented a voluminous amount of evidence establishing Dunham's guilt. Ten other witnesses, whose credibility has not been questioned, corroborated and added to Fitch's testimony. Each explained how they either were present during or after Dunham's attack on Toothman, and witnessed Dunham striking and holding Toothman and refusing to comply with the staff's commands to release her. Further, medical evidence and telephone calls were presented at trial that also established Dunham's guilt. Thus, it is not reasonably probable that the elimination of Fitch's testimony would have resulted in a different outcome for Dunham.

The evidence of the OIG investigation of Fitch was, however, material to the defendant's conviction as to Count 7, which dealt

## MEMORANDUM ORDER AND OPINION DENYING
## DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 83]

with the injuries to Fitch from Dunham's alleged biting of his finger.  Fitch was the only witness to testify about the finger biting incident, and thus, the Court cannot say that the evidence was so overwhelming on this Count that Dunham would have been unable to challenge Fitch's credibility on cross-examination using the evidence of the OIG investigation.

Hence, unlike counts 2, 4, 5, 6, and 9, the OIG investigation of Fitch was material to Count 7.  Thus, the Court concludes that, rather than granting the motion for a new trial, the appropriate course of action is to vacate and dismiss Dunham's conviction on Count 7. Based on that, it will proceed with Dunham's sentencing hearing scheduled for Thursday, September 5, 2013 at 1:30 P.M.

**IV.**

For the reasons discussed, the Court **DENIES** the defendant's motion for a new trial as to Counts 2, 4, 5, 6, 9 (Dkt. No. 83), and **VACATES** and **DISMISSES** the defendant's conviction on Count 7.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

DATED: September 4, 2013.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE